IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAURIE LINT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 10-321 |
| | ) Judge Nora Barry Fischer |
| THE COUNTY OF FAYETTE, | ) |
| VINCENT ZAPOTOSKY, Fayette County | ) |
| Commissioner, in his individual capacity, | ) |
| VINCENT A. VICITES, Fayette County | ) |
| Commissioner, in his individual capacity, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION

Pending before the Court is the Defendants' motion for summary judgment. (Docket No. 24). Because the Court finds that there are disputed issues of material fact, Defendants' motion [24] will be DENIED.

### I. FACTUAL BACKGROUND[1]

#### a. General Background

Plaintiff Laurie Lint ("Lint") is a resident of Fayette City, Pennsylvania. (Docket No. 1 at ¶ 2). She was hired by Defendant Fayette County to work as a Clerk-Typist in its Elections Bureau in 1989. (Docket No. 34 at ¶ 1). In 1999, Lint was promoted to Director of the Elections Bureau by a vote of Fayette County's three-member Board of Commissioners ("Board"). (*Id*. at ¶¶ 4, 5). The parties agree that the Directorship was not a political position and political party affiliation was not a requirement for Lint's promotion. (*Id*. at ¶ 10; Docket No. 25 at ¶ 8).

---

[1] Because, at summary judgment, the facts must be construed in the light most favorable to the non-movant, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000), this section is derived largely from the Plaintiff's characterizations of the facts.

1

Defendant Vincent Vicites ("Vicites") was a Commissioner at the time of Lint's promotion, and voted in favor of her promotion. (Docket No. 34 at ¶ 8).

As Director, Lint's responsibilities included oversight of the elections process for Fayette County. (*Id*. at ¶ 9). In this capacity, she reported directly to the Board. (*Id*.). Lint supervised Larry Blosser, a Voting Technician, and Cheryl Karol, a Clerk, among others. (*Id*. at ¶¶ 56, 60). Both Blosser and Karol are registered Democrats. (*Id*. at ¶¶ 57, 59).

Lint had registered to vote for the first time when she was hired by Fayette County in 1989. (*Id* at ¶ 2). She did so as a Democrat. (*Id* ¶ 3.). She remained a Democrat until January 2007, when she changed parties from Democrat to Republican. (*Id*. at ¶¶ 11, 12). At the time of this change, the Board to whom she reported consisted of two Republicans, Angela Zimmerlink ("Zimmerlink") and Joseph Hardy, and one Democrat, Vicites. (*Id*. at ¶ 13).

In January of 2008, following the 2007 election season, Commissioner Hardy was replaced on the Board by Defendant Vincent Zapotosky ("Zapotosky"), a Democrat. (*Id*. at ¶ 12). At this point, the Board consisted of two Democrats, Defendants Zapotosky and Vicites, and one Republican, Zimmerlink. (*Id*. at ¶ 17). Commissioners Zapotosky, Vicites and Zimmerlink did not work well together on the Board. (*Id* ¶ at 19). Zimmerlink believed Zapotosky and Vicites constantly excluded her from County business due to her political affiliation. (Docket No. 34 at ¶ 20). Zimmerlink eventually filed a lawsuit against Zapotosky and Vicites, alleging they violated her constitutional rights. (*Id*.).

Lint did not discuss her political party change with Zapotosky or Vicites, but she did inform Zimmerlink of the change in her political affiliation. (*Id.* at ¶ 118). Still, Lint claims that Vicites and Zapotosky knew of her party change because they received "street lists" that contained political party information about individual voters in the County. (*Id*. at ¶¶ 109, 111).

2

Following her change in parties, Lint perceived a change in the way she was treated by Zapotosky and Vicites. She claims they no longer came to her for business-related requests, going instead to her Democratic subordinates. (*Id*. at ¶¶ 116, 117). Zapotosky and Vicites claim that they only became aware of Lint's affiliation with the Republican Party through the events that precipitated this lawsuit. (Docket No. 25 at 5).

### b. Disciplinary Actions

In 2008, Fayette County's human resources functions were administered by Felice & Associates, a consulting firm based in Greensburg, Pennsylvania. (Docket No. 34 at ¶ 22). On April 1, 2008, Felice & Associates assigned Dominick Carnicella ("Carnicella") as the on-site Human Resources Director for Defendant Fayette County. (*Id*. at ¶ 24). Carnicella is a registered Democrat and has attended political functions for both Zapotosky and Vicites. (*Id*. at ¶¶ 26, 27).

Lint had a clean disciplinary record as an employee of Fayette County from 1989 until early 2008. (*Id*. at ¶ 28). Starting in April 2008 and continuing through her termination in October 2009, however, Lint was the subject of numerous disciplinary inquiries and investigations, as discussed in the following sections.

### i. Budget and Training Event Investigation, April 2008

On April 3, 2008, two days after being appointed on-site Human Resources Director, Carnicella investigated Lint for two work-related incidents. (*Id*. at ¶ 29). The first involved a budgeting issue where Lint's office had allocated inadequate resources for a software and licensing initiative. (*Id*.). The second incident involved Lint's failure to attend a voting machine training event with senior citizens of Fayette County (*Id*.).

Lint claims that the software budget issue was not her fault because the amount she budgeted was based on the information provided by the software vendor. (*Id*. at ¶ 33). Likewise,

3

she claims that she was not at fault for the training event fiasco because the session was scheduled by Vicites' assistant, and not by Lint herself. (*Id.* at ¶ 34).

On the basis of his investigation, Carnicella drafted a disciplinary verbal warning to Lint and presented it to the Board for signature. (*Id*. at ¶ 30). This disciplinary action required the signatures of at least two of the three Commissioners to become effective, and both Zapotosky and Vicites signed the document. (*Id*. at ¶ 31). Learning of Carnicella's investigation only when presented with the verbal warning, Zimmerlink objected to the disciplinary action pending more information. (*Id*. at ¶¶ 31, 32). She also objected to being left out of the investigation. Ultimately, the warning was not issued and Lint was not made aware of the disciplinary investigation. (*Id*. at ¶¶ 36, 37). Carnicella maintains that this was at the behest of the Commissioners. (*Id*. at ¶ 41).

### ii. Timesheet Investigation, May 2008

In May 2008, Carnicella investigated Lint for another incident, this time involving a timesheet discrepancy. (*Id*. at ¶ 44). In early May, Lint's husband underwent heart surgery. (*Id*. at ¶ 47). Prior to taking time off to be with her husband, Lint submitted a timesheet reflecting her estimate for the number of leave hours she would take over a three-day period. (Id. at ¶ 44). Her estimations proved inaccurate. When she returned to the office, Lint did not correct her timesheet. (*Id*. at ¶ 47). In response to Carnicella's questioning, Lint maintained that in the wake of her husband's medical procedure she simply forgot to update her submitted timesheet. (*Id*.).

Carnicella concluded that Lint falsified her timesheet and recommended a one-day suspension. (*Id*. at ¶ 44). Again, this disciplinary action required the signatures of at least two of the three Commissioners. Zapotosky and Vicites signed off on the suspension. (Docket No. 35-3 at 35). Zimmerlink disagreed and declined to sign, concluding that Lint's error was inadvertent

4

and that a verbal warning would be more appropriate. (*Id.* at 36). Nevertheless, with the requisite two signatures, Carnicella issued the suspension to Lint on May 29, 2008. (*Id.* at 35).

### iii. Staff Complaints Directed at Plaintiff, May 2008

Carnicella claims that in May of 2008, he was asked to investigate complaints made by Elections Bureau staff regarding Lint's job performance. (Docket No. 34 at ¶ 49). It is unclear which of the Commissioners made this request. On May 27, 2008, Carnicella interviewed office staff members about Lint, and noted their complaints regarding her job performance (*Id.* at ¶ 48). These complaints included allegations that Lint had a "lax attitude," was absent from the office, and failed to provide direction to her staff. (Plaintiff's Exhibit 15). Shortly thereafter, Carnicella met with Lint and discussed the issues raised by the complaints. Lint agreed to work on these issues, and no disciplinary action was taken. (Docket No. 35-3 at 20).

### iv. Voter Purge Issue, July 2008

On July 24, 2008, the Board directed Lint to conduct a "voter purge," i.e., removing from the County records those voters no longer living in the County. (Docket No. 34 at ¶ 69). However, with elections looming in the fall Lint was concerned that the purge would not be completed within the requisite timeframe, and so decided to delay the purge until after the fall 2008 elections. (*Id.* at ¶¶ 70, 71). Zapotosky publicly supported Lint's decision in an August 8, 2008 newspaper article. (*Id.* at ¶ 72).

### v. HAVA Grant Issues, 2008

Also in 2008, Lint was responsible for submitting reports and other documentation for Help America Vote Act (HAVA) grant funding. (Docket No. 32 at page 15). She missed the deadline for submitting the paperwork. (*Id.*). She also committed errors in documenting the grant funding. (*Id.*). Defendants allege Lint had similar problems with HAVA grant reporting going

back to 2006. However, no formal disciplinary action was taken against Lint for HAVA-related issues. (*Id*.). Zimmerlink has testified that difficulties with HAVA reporting were not unique to Lint, and that other Departments were similarly noncompliant. (*Id*.).

### vi. Uniontown Council Seat Issue, March 2009

In March 2009, a city council seat in Uniontown, Pennsylvania, was vacated when a sitting councilmember resigned. (*Id*. at ¶ 75). Lint contacted the Secretary of State's office for guidance on the procedure for filling the vacancy. (*Id*. at ¶ 77). A Secretary of State representative informed her that the position would be filled by election. (*Id*. at ¶ 79). Lint forwarded this information to the county chairpersons for the Democratic and Republican parties (Id.).

The Democratic Chairman, Fred Lebner, came to the Elections Bureau for further instructions. (*Id*. at ¶ 80). Lint was unavailable, so Lebner directed his questions to Karol. (*Id*. at ¶ 81). Karol contacted the Secretary of State for more information. (*Id*. at ¶ 82). Contrary to its earlier guidance to Lint, the Secretary of State's office informed Karol that the city council vacancy was to be filled by appointment, not election. (*Id*. at ¶ 84). Karol relayed this information to Lebner, and later to Lint. (*Id*. at ¶¶ 85, 86).

Relying on Karol's information, Lint told a newspaper reporter that the city council position would be filled by appointment. (*Id*. at ¶ 87). Also relying on Karol's information, the Democratic Party did not submit a candidate for the open city council position. (*Id*. at ¶ 89). However, Karol's information was incorrect, and the vacancy was in fact to be filled by election. (*Id.* at ¶ 88). As a result, the Elections Bureau was publicly embarrassed and the Democratic Party missed the deadline for submitting a candidate for the position. (*Id*. at ¶ 89).

On September 30, 2009, Zimmerlink asked Carnicella to investigate the issues related to the Uniontown City Council election. (*Id*. at ¶ 93). She directed him to limit his inquiry to the Uniontown election issue. (*Id*. at ¶ 94). However, during his investigation Carnicella interviewed Lint's subordinates and noted general complaints regarding Lint's job performance. (*Id*. at ¶ 95). Carnicella did not investigate Karol for her role in the Uniontown election issue, and no disciplinary action was taken against her. (*Id*. at ¶ 90).

On October 5, 2009, Carnicella met with Vicites and Zapotosky to discuss his investigation. (*Id*. at ¶ 96). Zimmerlink was not informed of the meeting until the day on which it was scheduled, and could not attend. (*Id*. at ¶ 97). On October 7, 2009, all three Commissioners met to discuss how Lint should be disciplined. (*Id*. at ¶ 99). Vicites and Zapotosky concluded that she should be given the options of resignation or termination. (*Id*. at ¶ 102). Zimmerlink agreed that Lint should be disciplined, but argued that her punishment should fall short of removal. (Docket No. 35-4 at 28). Nevertheless, Zapotosky and Vicites directed Carnicella to present Lint with the choice of resignation or termination. (Docket No. 34 at ¶¶ 105, 107). Lint refused to resign, and on October 7, 2009, she was terminated. (*Id*. at ¶ 108).

Following Lint's termination, Blosser, a Democrat, was promoted to Acting Director for the Elections Bureau. (*Id*. at ¶ 62). Blosser was named permanent Director on February 1, 2010. (*Id*. at ¶ 63).

## II. PROCEDURAL BACKGROUND

The complaint in the instant action was filed March 11, 2010 in this Court. (*See* Docket No. 1). Lint claimed that the Defendants violated her constitutional rights by firing her due to her political affiliation. (*Id.* at ¶ 13). Defendants filed their answer and affirmative defenses on May 10, 2010. (*See* Docket No. 8). They filed the motion for summary judgment presently at issue on

April 7, 2011. (*See* Docket No. 24). Lint filed a brief in opposition as well as a response to the Defendants' concise statement of material facts. (Docket Nos. 32-34). Argument on the motion was held on June 1, 2011. (Docket No. 39). With leave of the Court, Defendants and Lint filed supplemental materials after the hearing. (Docket Nos. 41-43). The motion is now ripe.

### III. LEGAL STANDARD

#### a. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment will only be denied when there is a genuine issue of material fact, i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). The mere existence of some disputed facts is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

In determining whether the dispute is genuine, the Court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. Rather, the Court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict

---

[2] Rule 56 was amended effective December 1, 2010. The explanatory notes to the 2010 amendments explain that while the language in Rule 56 was changed from "issue" to "dispute," the "standard for granting summary judgment remains unchanged." Thus, the Court considers binding prior jurisprudence of the United States Supreme Court and the United States Court of Appeals for the Third Circuit in arriving at the standard to be employed in addressing the instant motion.

for the non-moving party. *McGreevy*, 413 F.3d at 363; *see also Simpson v. Kay Jewelers*, 142 F.3d 639, 643 n.3 (3d Cir. 1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)). Summary judgment is precluded where disputes exist over what inferences can reasonably be drawn from the facts, even though the underlying facts may be undisputed. *Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1380 (3d Cir. 1991). In evaluating the evidence, the Court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149-151 (2000); *Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 159, & n. 3 (3d Cir. 2009); *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). A court should not parse the issues and accept a defendant's explanation for each action the defendant may have taken. *Snooks v. Duquesne Light Co.*, 314 Fed. Appx. 499, 505 (3d Cir. 2009). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves*, 530 U.S. at 150 (quoting *Liberty Lobby, Inc.*, 477 U.S. at 255).

  b. **Political Discrimination**

 The First Amendment protects public employees from termination based upon their political affiliation unless the position at issue involves policymaking. *See Elrod v. Burns*, 427 U.S. 347, 359, 373 (1976). Indeed, the First Amendment protects against any use of political affiliation in determining eligibility for promotion, transfer, recall, or other change in work status in non-policymaking positions. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75 (1990). The exception for "policymaking" exists because "political loyalty is essential to the position itself." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing *Boyle v. County of Allegheny, Pa.*, 139 F.3d 386, 394 (3d Cir. 1998).

9

From these principles, the United States Court of Appeals for the Third Circuit has devised a three-part test for establishing a claim to political discrimination. A *prima facie* case of political discrimination requires the plaintiff to show that: (1) the plaintiff was employed at a public agency in a position that does not require political affiliation; (2) the plaintiff was engaged in constitutionally protected conduct; and (3) this conduct was a substantial or motivating factor in the government's employment decision. *Galli*, 490 F.3d at 271 (citing *Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir. 1997)). Once this *prima facie* showing is made, the employer may "avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." *Galli*, 490 F.3d at 271 (citing *Stephens*, 122 F.3d at 176).

## IV. ANALYSIS

In order to prevail on her claim, Lint must show that all three elements of a *prima facie* political discrimination claim exist. In order for the defendants to overcome Lint's claim at the summary judgment stage, then, they must either show that at least one element of the political discrimination claim is lacking *or* that Lint was fired for legitimate, non-discriminatory reasons. The Court finds, after construing the disputed facts in the light most favorable to Lint, that the defendants have failed to carry their burden.

### a. Political Affiliation as a Job Requirement

The first element of Lint's *prima facie* case appears to be undisputed. Both Lint and the Defendants acknowledge that Lint's position was not dependent upon political affiliation. (*See* Docket No. 26 at ¶ 8; Docket No. 34 at 10). The defendants cannot possibly show that Lint has failed to carry her burden with respect to this element.

### b. Constitutionally Protected Conduct

Lint must also show that she "engaged in constitutionally protected conduct." *See, e.g., Stephens*, 122 F.3d at 176. This requirement has sometimes been described simply as the requirement that "the employee maintain [] an affiliation with a political party." *See, e.g., Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 663-64 (3d Cir. 2002). However, the Court of Appeals has clearly established that the right is somewhat broader than simply maintaining affiliation, as "the right not to have allegiance to the official or party in power itself is protected under the First Amendment, irrespective of whether an employee is actively affiliated with an opposing candidate or party." *Galli*, 490 F.3d at 272 (citing *Branti v. Finkel*, 445 U.S. 507, 519 (1980)).

The Court of Appeals has applied this rule broadly. It has, for example, held that a plaintiff can meet the second prong of the political discrimination test by showing an adverse action simply "because of active support for a losing candidate within the same political party." *See Robertson v. Fiore*, 62 F.3d 596, 600-01 (3d Cir. 1995). Similarly, the Court of Appeals has found that the failure to actively support a winning candidate is conduct protected by the First Amendment. *See Bennis v. Gable*, 823 F.2d 723, 731 (3d Cir. 1987).

This precedent leads the Court to conclude that Lint has satisfied the requirements of the second prong of the *prima facie* political discrimination test. As in *Goodman*, Lint maintains an official affiliation with a political party. (Docket No. 34 at ¶¶ 11, 12). Similarly, Lint's right to be affiliated with a different party than that of the Defendant Commissioners is protected under *Galli* and *Branti*. The defendants do not dispute Lint's political affiliation. (*See* Docket No. 26 at ¶14). The Court, therefore, concludes that there is no factual dispute with respect to this second

prong of Lint's political discrimination claim, and that the defendants have failed to show that Lint cannot carry her burden with respect to this element.

### c. Substantial or Motivating Factor

Finally, Lint must show that her constitutionally protected conduct was a "substantial or motivating factor" in the Commission's adverse employment action. *See Stephens*, 122 F.3d at 176. "[I]mplicit in th[is] prong is a requirement that the plaintiff produce sufficient evidence to show [that] the defendant knew of [the] plaintiff's political persuasion, which requires proof of both knowledge and causation." *Galli*, 490 F.3d at 275 (internal quotations omitted). The Court therefore examines both knowledge and causation.

### i. Knowledge

At this stage, the Court is satisfied that Lint has offered evidence sufficient to withstand summary judgment that the Defendants were aware of her political affiliation. Although she offered no evidence that she had expressly informed the Defendant Commissioners of her decision to become a Republican, the circumstantial evidence before the Court, viewed in the light most favorable to Lint, establishes that the defendants were aware of Lint's change in affiliation.

Both sides refer the Court to voter lists from which political affiliation can be determined. (*See* Docket No. 26 at ¶ 72; Docket No. 34 at ¶ 110). Lint alleges that the Defendant Commissioners had access to these lists and that these lists reflected her change in political party. (*See* Docket No. 34 at ¶¶ 111, 112). She also claims that, when she was listed as a Democrat, she received campaign information from Vicites. (*Id.* at ¶ 113). Now that she is listed as a Republican, she no longer receives materials from Vicites. (*Id.* at ¶ 114). Lint also claims that she has perceived a change in the way she is treated by Zapotosky and Vicites at the office. (*Id.*

12

at ¶¶ 116, 117). This circumstantial evidence is sufficient to introduce a material question of fact to overcome summary judgment.

### ii. Causation

As with knowledge, the Court believes that Lint has presented facts adequate to introduce a material question of fact. The Court of Appeals has dealt with a situation very similar to the one at hand. In *Galli*, the Court addressed a claim by a plaintiff who had been fired, according to the defendants, due to the plaintiff's project being completed "over-budget, delayed, and ultimately removed from [the plaintiff's] scope of authority." *Galli*, 490 F.3d at 276. Here, as in *Galli*, Lint is accused of running projects over budget, (*see* Docket No. 26 at ¶ 27 (Lint "failed to adequately budget $51,000")), and completing reports late. (*Id.* at ¶ 24 (Lint turned in HAVA reports late)).

As evidence that she had been terminated due to her political affiliation, Galli showed that she had been replaced by a person of the opposite political party. *Galli*, 490 F.3d at 276. Galli also pointed to other evidence to support her argument on causation. *See id.* (noting that Galli's replacement was unqualified for the position, that Galli's job was filled before she was even terminated, and that Galli's contributions even garnered an award of excellence after she was fired). "Once again, viewing the facts in the light most favorable to [the plaintiff]," the Court of Appeals held that "it would be premature to grant … summary judgment on the causation issue." *Id.*

This Court will follow the example of the Court of Appeals. Here, as in *Galli*, there is significant evidence to support a finding that Lint was terminated for cause. However, there is also ample evidence that militates against a grant of summary judgment. It may be proved true, for example, that the defendants started treating Lint differently shortly after she changed parties.

13

(*See* Docket No. 34 at ¶¶ 113-117). Additionally, Zimmerlink, the only other Republican involved in this employment scenario, presented what appear to be well-reasoned dissents to the actions taken by the Defendant Commissioners. (*See*, *e.g.*, Docket No. 34 at ¶¶ 33, 46). According to Lint, Zimmerlink was also subject to disparate treatment. (*See*, *e.g.*, Docket No. 34 at ¶¶ 21-22, 25, 31).[3] The fact that the only other Republican related to this case was allegedly treated differently from Democrats of equal position raises, in this Court's mind, a question of fact that the Court should leave to the jury.

There are also several inconsistencies in the Defendants' justifications for termination that give rise to some concern by this Court. *See Andes v. New Jersey City University*, 2011 WL 1053619, *3 (3d Cir. March 24, 2011) ("At summary judgment, therefore, a court must view … implausibilities, inconsistencies, incoherencies, and contradictions, *however weak*, in the light most favorable to the non-moving party."). First, there is evidence that Zapotosky approved of Lint's delay of the purge at the time the delay occurred. (Docket No. 34 at ¶ 72). Now, he claims that the purge delay was a factor in the termination decision. (*Id.* at ¶ 74).[4] Second, there is the 2008 Disciplinary Notice that was never given to Lint. (*Id.* at ¶ 39). Third, it appears that there were multiple Departments that failed to file timely and accurate grant reports. (Docket No. 32 at page 15). Yet, no other Department heads appear to have been reprimanded for these alleged failures. (Docket No. 35-1 at Ex. 3, 17-18). These inconsistencies, too, lead the Court to conclude that summary judgment is not appropriate.

---

[3] Angela Zimmerlink has also filed a suit against Zapotosky and Vicites. *See* Civ. Action No. 10-237. Like Lint, Zimmerlink alleges that the Democrat defendants have engaged in political discrimination against her. *Id.*

[4] The Court reiterates that credibility is a question for the jury. *See Reeves*, 530 U.S. at 150. The Court therefore declines to engage in a determination of whether this testimony or Zapotosky's original public statements were true.

### d. Non-Discriminatory Justifications

Because the facts, interpreted in the light most favorable to Lint, adequately support a *prima facie* finding of political discrimination, the defendants must be able to show by the preponderance of the evidence that they would have terminated Lint's employment absent any political discrimination. *See Galli*, 490 F.3d at 271. Once again, however, the facts construed in the light most favorable to Lint do not lead the Court to conclude that summary judgment is appropriate. The same facts relevant to the analysis of causation above, *see supra* Part IV.c.2, lead this Court to conclude that there are material questions of fact based on the conflicting evidence presented by the parties.

Defendants have produced evidence sufficient to justify their adverse employment action against Lint. (*See, e.g.*, Docket No. 26 at ¶¶ 24, 27, 29). Meanwhile, Lint has produced evidence that could lead a reasonable jury to conclude that she was terminated for discriminatory reasons. (*See, e.g.*, Docket No. 34 at 33, 46, 113-117). Resolution by the Court of these disputed material facts is not appropriate; and, the Court therefore refuses to resolve them. Because there are unresolved questions of material fact with regard to Defendants' non-discriminatory justifications for Ms. Lint's termination, it is inappropriate for the court to grant summary judgment on the issue.

### V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED. This case should proceed to trial by a jury. An appropriate order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf: All counsel of record

Date: July 5, 2011